Alvin Craig JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–97–00054–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 30, 1998.

Decided Feb. 11, 1998.

Discretionary Review Refused
June 17, 1998.

Geoffrey W. Hutson, Houston, for Appellant.

John B. Holmes, District Attorney of Harris County, Houston, for Respondent.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Alvin Craig Jones, the appellant, was charged by indictment for the offense of possession of four to 200 grams of cocaine with the intent to deliver, enhanced by a prior felony conviction. Following a jury trial, Jones was found guilty of the lesser offense of possession of four to 200 grams of cocaine. After finding the enhancement paragraph true, the trial judge assessed punishment at twelve years' confinement.

Jones now brings this appeal and presents three issues. First, Jones asserts that the trial judge erred in denying a mistrial after the judge communicated with the jurors and specified that she would call the jurors at a specific time to see if they had reached a verdict. Second, Jones argues that the evidence was legally and factually insufficient to support the verdict. ·Third, Jones argues

that the trial court committed error when it refused to permit the defendant to pose a question to a police officer when the court speculated that the answer would require a hearsay response.

## BACKGROUND

Officer Mark Smith of the Houston Police Department received information from a confidential informant that drugs were being sold from Jones' residence. On May 14, 1996, Smith directed his informant to make two "controlled buys" at the residence. Before sending the informant to the residence to purchase drugs, Smith searched the informant to ensure that he had no drugs on his person.

At approximately 6:00 p.m., the informant went to Jones' residence to attempt the first purchase. Jones met the informant at the front door. Following a conversation, Jones went to a Chevrolet, which was parked on another's property ten or fifteen yards in front of his house, opened the front door, and then walked back to the informant. The informant then left the residence and returned directly to Officer Smith. The informant gave Officer Smith some crack cocaine he allegedly had just purchased.

The second purchase occurred at approximately 10:30 p.m. The informant was again met by the appellant, who again went to the Chevrolet, but opened the trunk on this occasion, and returned to the informant. The informant then returned directly to Officer Smith and delivered to him an additional amount of crack cocaine.

Officer Smith obtained a search warrant for Jones' residence and the Chevrolet based upon the two purchases. The search warrant was executed by Smith at 11:45 p.m. Jones unlatched the screen door and let the officers inside. Although the drug dogs alerted to the scent of narcotics while inside Jones' home, no narcotics were found. The officers located the keys to the Chevrolet lying next to Jones' wallet, along with several other sets of keys on top of a dresser in the residence. An officer opened the trunk of the Chevrolet. Slightly over four grams of

cocaine were discovered in a work glove located in the trunk.

## ANALYSIS

In his first issue, Jones asserts that the trial judge erred in denying a mistrial after the judge communicated with the jurors and specified that she would call the jurors at a specific time to see if they had reached a verdict. The jury received the case and began deliberations at approximately 1:55 p.m. At 5:00 p.m., the trial judge brought the jury back into the courtroom and advised the jury that she was about to release them for the night and requested that they return on the next day to continue deliberations. One of the jurors asked if the jury could return on the day following the next day because of pressing job matters that he had. The following exchange then took place:

THE FOREMAN: Can we stay for a little bit longer? Because I think we're close.

JUROR: Yeah.

JUROR: Are y'all for that? Can we do that?

THE COURT: You want to stay just a little longer this evening?

JUROR: Uh-huh (affirmative.)

THE COURT: Okay. I want to bring you back out at 5:15. Okay.

(Whereupon a break was taken).[1]

MR. MCGOEY: Just for purposes of the record, I'd ask for a mistrial in regards to the last particular exchange between the jury and the Court.

THE COURT: Which exchange is that?

MR. MCGOEY: Well, I mean, that my client is unduly prejudiced by the fact that the Foreman of the jury has indicated to the Court that they "need a little bit more time," quote, unquote. And the fact that the question asked from the jurors, if that would be a problem with them coming back in the morning, I believe that now they're going to rush back there and basically reach a verdict, that otherwise, they may not have reached had it not been for

---

1. The jurors apparently returned to their deliberations at this time.

the communication between the Foreperson of the jury and this Court.

And I would ask for a mistrial at this time, Judge, if the Court would so grant one.

THE COURT: Thank you for your motion. That's denied.

MR. MCGOEY: Thank you, Judge.

The jury returned at 5:15 with a guilty verdict.

Jones argues that the trial court's communication violated TEX.CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981) because the trial court did not reduce the communication to writing and permit the defendant to object.[2] Furthermore, Jones argues that the setting of a time to return coerced the jury to reach a verdict in the time allotted.

■■■ Communication between the court and the jury, although not made in compliance with Article 36.27, which does not amount to an additional instruction by the court on the law or some phase of the case, does not constitute reversible error. *McGowan v. State,* 664 S.W.2d 355, 358 (Tex. Crim.App.1984); *Brown v. State,* 505 S.W.2d 850, 857 (Tex.Crim.App.1974). A communication concerning an administrative matter, even though the procedure is set by law, does not amount to an additional instruction. *See Leger v. State,* 688 S.W.2d 130, 133 (Tex. App.—Beaumont 1985, no pet.); *Martin v. State,* 654 S.W.2d 855, 857 (Tex.App.—Dallas 1983, no pet.); *Phillips v. State,* 654 S.W.2d 846, 848–49 (Tex.App.—Dallas 1983, no pet.); *Rodriguez v. State,* 625 S.W.2d 101, 102 (Tex. App.—San Antonio 1981, pet. ref'd).

■■■ This communication between the judge and jury concerned an administrative matter; the day and time to continue deliber-

ations. It was not the type of communication contemplated by Article 36.27 as required to be in writing. Further, the time stated by the judge when she would bring the jury back did not coerce the jury into reaching a verdict. The jury stated they were close to a verdict and requested to stay longer. The jury was also aware that if they did not reach a verdict they could return in two days' time to continue their deliberations. The judge in no way pressured them to reach a verdict in the time allotted on the first and, ultimately, the only day of deliberations. No motion for new trial was filed, and there is no evidence that any juror was coerced. This point of error is overruled.

In the second issue presented on appeal, Jones argues that the evidence was legally and factually insufficient to support the verdict. Jones presents a list of factors which are determinative of whether a defendant charged with knowingly and intentionally possessing drugs may be affirmatively linked with the drug he allegedly possessed. After comparing each factor with the facts of his case, Jones concludes that the evidence is legally and factually insufficient to support the verdict.

When reviewing the legal sufficiency of the evidence, we must review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Webb v. State,* 801 S.W.2d 529, 530 (Tex.Crim.App. 1990); *Kyte v. State,* 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.).

■■■ When reviewing the factual sufficiency of the evidence, we review all of the evidence and set aside the verdict only if it is

---

2. TEX.CODE CRIM. PROC ANN. art. 36.27 (Vernon 1981) reads as follows:

When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the

same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

■■■■ To support a conviction for possession of a controlled substance, the State must show that the accused exercised actual care, control, or custody of the substance, that he was conscious of his connection with it, and that he possessed the substance knowingly or intentionally. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995). The evidence used to satisfy these elements can be direct or circumstantial. *Id.* Whether direct or circumstantial evidence is used, the State must establish that the accused's connection with the substance was more than just fortuitous. *Id.* However, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional facts must affirmatively link the accused to the contraband. *McMillon v. State,* 940 S.W.2d 767, 768–69 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *Menchaca v. State,* 901 S.W.2d 640, 651 (Tex. App.—El Paso 1995, pet. ref'd); *Green v. State,* 892 S.W.2d 220, 222 (Tex.App.—Texarkana 1995, pet. ref'd). Although the defendant must be affirmatively linked to the contraband, this link need not be so strong as to exclude every other reasonable hypothesis except the defendant's guilt. *Brown v. State,* 911 S.W.2d at 748. The affirmative link ordinarily emerges from an orchestration of several factors and the logical force they have in combination. *Villegas v. State,* 871 S.W.2d 894, 896 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Mere possession of a vehicle in which contraband is found, without additional facts and circumstances connecting the accused to the contraband, will not support a conviction for possession. *Hernandez v. State,* 867 S.W.2d 900, 904 (Tex.App.—Texarkana 1993, no pet.).

■■■■ Factors to be considered when evaluating affirmative links include: 1) the defendant's presence when the search was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the contraband; 4) whether the defendant was under the influence of a controlled substance when arrested; 5) whether the defendant possessed other contraband when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. *Green v. State,* 892 S.W.2d at 222.

■■■■ Jones claims that the State failed to meet its legal and factual burden to show that he exercised care, custody, and control over the contraband because Officer Smith did not see Jones deliver drugs to the informant and the informant was not called to testify against Jones. Jones also claims that failure to find the keys to the Chevrolet on his person also attenuates his connection with the drugs later found in the car. Further, Jones claims that his level of cooperation with the police while they were executing the search warrant also helps to diminish any affirmative links to the contraband because he made no furtive gestures nor did he attempt to flee. Officers did not find any drug paraphernalia on Jones' person or in his home. Jones was not found to be under the influence of any controlled substance when arrested.

In opposition to Jones' claim, the State asserts that the two purchases of drugs by the police informant demonstrates that Jones exercised care, custody, and control over the contraband. The State argues that, based upon Jones' actions in going to the car each time a buy was made, the jury could reasonably infer that Jones provided the informant with cocaine which he retrieved from the car. Other factors which the State asserts establishes an affirmative link between Jones and the drugs include: the location of the keys to the car on the dresser next to Jones' wallet; Jones' presence when the search warrant was executed; and the signal of the drug dogs alerting to the presence of narcotics inside Jones' residence.

Viewing the evidence in the light most favorable to the verdict, the evidence is factually and legally sufficient to support the verdict. The second point of error is overruled.

■ In his third point of error, Jones argues that the trial court committed error when it refused to permit the defendant to pose a question to a police officer regarding the ownership of the Chevrolet. Jones claims that he attempted to ask Officer Smith if he had personal knowledge regarding ownership of the Chevrolet and the trial judge improperly sustained the State's objection to the question. The ownership of the car is one of the many factors in the affirmative link analysis discussed under point of error two above.

Before trial, the State made an oral motion before the judge to prevent the defense from asking any questions regarding the registration of the Chevrolet if the question required a hearsay response. The trial judge granted the motion, stating that she would instruct the defense to not ask any questions requiring a hearsay response. The exchange between defense counsel and the witness, Officer Smith, which Jones claims was ruled upon improperly by the trial court, is as follows:

Q  Who owns these cars?  Do you know who owns those cars?

A The registered owner?

Q  Yes.

MS. CANADY: Objection, Your Honor. I believe we had a Motion in Limine on asking him whether or not—

THE COURT: I'm sorry, I can't see which car he is pointing to on the diagram. Will you approach, please?

(Whereupon the following proceedings were held at the bench outside the hearing of the jury.)

THE COURT: Of course, Mr. McGoey, you may if he's seen people near the car, people driving the car or working on cars, but please don't elicit anything that calls for a hearsay.

MR. MCGOEY: Okay, Judge. Judge, what I will ask him is: "To your knowledge, does Mr. Jones own the car?"

THE COURT: That's just—to include hearsay. You can ask him if he has per-

sonal knowledge, but that question calls for a hearsay response.  Sustained.

MR. MCGOEY: Okay. Thank you, Judge.

(Whereupon proceedings at the bench concluded and trial proceedings continued in the presence of the jury.)

*BY MR. MCGOEY:*

Q  You have no knowledge—

MS. CANADY: Objection, same objection.

THE COURT: Sustained.

Although the trial judge suggested to defense counsel that he should ask Officer Smith if he had personal knowledge regarding the car's registered owner, defense counsel failed to ask the question in a format which would avoid a hearsay response. Jones claims that if the jury would have heard information regarding the ownership of the car, they might have reached a different verdict. Jones claims that since a rational trier of fact might have reached a different conclusion if the error and its effects had not resulted, the verdict is tainted.

The State claims that the error, if any, is waived because Jones failed to make a bill of exception showing what Officer Smith's response would have been had the trial court not sustained the objection.

Although Jones claims that the trial court denied him the opportunity to ask if the witness had personal knowledge of the ownership of the vehicle, the questions found on the record do not show that defense counsel was attempting to ask that particular question. Since there was no bill of exception made, this Court has no record of what defense counsel would have asked had the trial court not sustained the State's objection. The questions posed by counsel in the record do appear to call for a hearsay response. The judge did not err in sustaining the objection. Tex.R.Crim. Evid. 602 (lack of personal knowledge); Tex.R.Crim. Evid. 802 (hearsay rule). The third point of error is overruled.

The judgment of the trial court is affirmed.